People v. Juk May it please the court. We're here today. I apologize. I'm Ted Hanson. I represent the defendant, the appellant, Ted Hanson. We're here today on his appeal for claiming two errors that relate to the admission or perhaps non-consideration of evidence in the case. And we're also arguing the sufficiency of the evidence in order to show the defendant was guilty beyond reasonable doubt in the trial. This was a bench trial conducted in Williamson County. The last seven days of several witnesses. He was convicted at the conclusion of the bench trial of four separate counts of criminal sexual assault. We would first go over the issues of error, then I'll address the sufficiency of the evidence, although some of those error issues may relate to the sufficiency of the evidence. Primarily the two issues of error that we addressed first relates to the ability of the defendant to cross-examine the investigating officer as to the nature of her investigation. As a small piece of background, as indicated in the record, this complaining witness or the alleged victim in this case gave one statement and it was not written by her. It was not reported. It was an interview conducted with this officer. She took handwritten notes, then wrote out her report, and then destroyed the notes before she ever charged us. So the only opportunity that the defendant has to inquire as to this conversation, which was the only conversation outside of the trial itself that this alleged victim had, was to inquire of the officer. There was an attempt made in the court, and it's documented in brief, in which time there was an inquiry as to whether or not this particular victim, alleged victim, was able to identify specific dates at the time of the interview. This interview was objected as a hearsay objection and was sustained by the court, therefore foreclosing our opportunity to continue to inquire about the nature of this investigation. It is a difficult position for the defendant to defend himself when he can't inquire about statements made by the only person in this case to provide evidence against him, as you probably may have seen in the brief. This was a case where it was solely the testimony of the complainant witness. There is no physical evidence. There is no corroborating evidence, although there is a claim that there was one person who may have corroborated an aspect of the case. So this is a very difficult case for the defendant to defend himself from if he can't examine the people who have all the facts. What was the purpose of the questions asked of the investigating officer? The reason we were wanting to inquire about the nature of the investigation is because our theory of the case was obviously that this complaining witness had conducted this story based upon a conflict with her own mother, and that what we wanted to know was was she able to give answers, or did you have to suggest things to her? Was she able to remember things, or was she – she was not the only person in the interview. Her mother was there as was another woman. What we want to know is is she able to tell her story herself, or did she have to be assistive along the way to get to a story? Well, in the record, are those specific questions, were those asked and objections sustained? No, Judge. I can't sit here and tell you – You're telling me now where you wanted to go. That's exactly right, and it is appropriately addressed in the state's brief. But I take it you asked, did she tell you this or that? We got to our first question was, was she able to identify a specific date to you? And that's when the objection occurred and the judge sustained it. And I did not go further along that line of questioning. I freely admit that. It was covered in our motion to reconsider, so the issue was presented to the trial court in the motion to reconsider, but it was not presented at that point in the trial. In fact, the discussion had to do with impeachment of the witness, which at the time was my expectation of the way I should have gone with that. And it is not – we tried to correct that in the motion to reconsider, and I can't argue against a lot of positions that are made by the state's brief. The point is it was necessary, in our opinion, in order to bring our theory of the case completely to bear. There were other issues of the ability of the complaining witness to testify consistently, which were well brought up and the trial court certainly considered, but this was just one more element that we were trying to establish before the court. And I will say that there was, in the record, an extensive argument over the hearsay objection and how it was going to be addressed earlier on in witnesses. And although it's certainly not part of the record, I can tell you that that discussion with the judge previously foreclosed another long discussion about how hearsay plays in and affected that issue. Thank you for what it's worth. So you cross-examined her extensively, I guess, about the dates. We did. And did you cross-examine her about the statement she'd given to the investigating officer? We did not cross-examine her extensively on the statement itself. So she was not asked, isn't it true that you told the officer some other date? No, she was not. Right. Well, partly because she was incapable of producing any of those dates during her direct examination. The theory obviously was, well, why help her now find dates that she was incapable of determining before? Our argument was that once she had gotten the story down on paper from the officers that she had a script in front of her that she could go from, and when that was pulled away from her in her direct examination, she was incapable of remembering some of the most basic elements that she apparently told those officers, according to the officers. And just for a point to be made, and I think you're making it here, the state used the same memorandum of the statement to refresh the alleged victim's recollection. Is that right? That's exactly right. There was an objection to that effect, and the trial court was correct that you can use almost any document to refresh a recollection. The problem that we had is that here's a statement she didn't produce, she didn't sign. I shouldn't say statement, there's a police report that was produced that she didn't sign. She didn't authorize what was attributed to her, but she was handed this at a time that she needed to remember something that she couldn't remember. Well, it isn't the rule you can use anything to refresh a witness's recollection? Well, it is a judgment, and that's why we didn't bring that up in the trial court after the statement. But it should have gone to credibility, though, as well, I think is the problem that we had with it, and the fact that she was able to do something that we were unable to attack. Nonetheless, it is an issue of we claim an error in that aspect, and she denies the opportunity to pursue that. In furtherance of the case, we're asking the court to grant a new trial based upon that error. I'd rather move on to some of the other points that are a little more involved. The second issue was, it's hard to wrap your head around this issue, it seems to me, and I was in the trial. During the testimony, the state was going through each of the alleged assaults, and it reached the third assault, and once again, the witness was incapable of producing a date. The state had alleged two dates in the month of February in their information, which of course you might evidence the case, but that's where they were going with this. And when they finished this third assault, or I should back up, when she asked her during the testimony regarding this third alleged assault, she said, when did it occur? I don't remember. She came up with the answer, sometime after the 15th of February. That's the best she could do for that third assault. They finished detailing the alleged events in the assault, and immediately after, I believe, something to the effect of, she says, I hung up the phone and went to sleep. The next question, and I'll read this directly from my brief, was there another incident between you and J.B., which is the initial she gave to my client, sometime in the month of February? Her direct answer, no. Okay, when was the next incident between you and J.B. if there was one? There wasn't, because his son was born. And then the state, knowing that this is a problem, says, okay, well, let's talk about the night his son was born. What was he doing that night? Now, our point is, she's unequivocally stated there was not another assault. There was no weighing of this or saying, well, I don't recall another, or maybe it was a definitive answer of no. And then she qualifies that definitive answer by saying, well, his son was born, so I know it wasn't another. The state doesn't address the issue of this definitive declaration. They ignore it. If there's a definitive declaration, they either have one or two choices. They can try and rehabilitate this witness by attacking the state, well, I'm not already sure about this. I mean, there's ways they could have done that. Or you can directly impeach your own witness, which, of course, is laid out in the brief on how they're supposed to do that. It's very involved. Both ways of correcting this statement are not advantageous to the state because, again, this is solely the testimony of this complaining witness. But what you're saying is the record carefully examined will only reveal testimony of three assaults. Up until this point in time. Up until this point in time, there is no testimony that she's been assaulted four times by anybody. And then they just talk about the last one, which you're saying is the third. Well, they continue to talk about the night his son was born. The state eventually gets to the point where they hand her this report, and they say, well, let's determine the date of the last assault. She doesn't even say the fourth assault. She says the last assault. And that's when she comes up with some date in March, which, of course, is after she's already said that his son was born on February 22nd. Obviously, there is a problem there. How can your last assault be March when you just testified that you did not assault him after his son was born on February 22nd? And, again, that goes to the sufficiency argument. That's why I said the date was declined. But there's a dramatic problem there. And the state doesn't get into a fourth assault when she goes to her report. She keeps saying the last assault. And when she says March 17th, that's when we begin to continue to make the objections. It's either ask and answer, because we're talking about the third assault that we have just detailed, or now she's talking about a fourth assault that she just denied. So she's impeached. That was the basis of the argument. It's one or the other. And the trial court agreed with her and said, no, this is a new assault that she's now detailing altogether. And based upon the context and the words of the testimony, the evidence, that's inconsistent. Based upon what the state's attorney is trying to do, I understand that she thinks the fourth assault, you know, she's got a new assault. But the court has to consider the evidence that is heard at this point, not the direction the state's attorney is trying to move this. Now, after this, the court allows it, and she doesn't detail a fourth assault, or details facts related to another than the last assault. She doesn't say fourth assault. I'll get to that in a minute. She details more facts about the last assault, which, again, I object to. We've already gone over the last or the third assault. You know, this is ask and answer. This is repetitive testimony. Okay. This is the problem I'm having. I don't understand exactly what your issue is. Is your issue that the record reflects testimony about only three assaults? What I'm saying is that at the point that they presented her with this record, and now they're claiming there was a fourth assault, what we're saying is that, well, the witness already definitively declared that there was only three, or that the third assault was the last assault. And by producing the document, presenting it to her, and now having her say, well, yes, there was a fourth assault, she's impeached her own witness during the testimony of the case. Okay. But I thought I heard you say she then developed additional facts about the same one she'd already testified to, or at least argued. It's argued, depending on how it's perceived. Okay. It's not until after there's an hour lunch break, and the first question coming out of lunch break is, how many times were you assaulted? Then she says four. So she eventually gets to the point where she says there were four times. It does come out. But it's well after this has all occurred. And our argument is that at the point that this occurs, there's been an error. And anything that comes in after that can't be considered anymore because she's made a definitive statement. They've impeached her. How can this subsequent testimony be considered? Okay. When she was handed the memorandum, or whatever it was, they said, does this refresh your recollection? Is that what the question was? They didn't say, the statement didn't say, you testified contrary to what you just said. Correct. They don't ever address the fact that she made that statement. They never go back and say, so when you said this before, you were mistaken or you were confused. They never correct that statement at any point. But after her recollection was refreshed, she ultimately said, in effect, my recollection's refreshed. I was assaulted four times. Well, at the time when they go to reflect her recollection, they don't say it's her fourth assault. They say it's the last assault. And I understand that the state's thinking the fourth assault. What I'm looking at is what the witness is being told. So you can't attribute what the state knows to the witness. The witness doesn't necessarily know that they're talking anything different than the third assault that they were just detailing. At that point, doesn't that all just go to the way the trial judge is going to give the testimony? I think it does. I think there's an argument you can make both ways, Your Honor. It does. And with that, I'll go ahead and move into the sufficiency of the evidence. Because you have four separate counts of criminal sexual assault. I'm not going to go into the less important ones. Each and every claim that we make, we go into extensive detail of her ability to execute her testimony with the state quite well and her inability to remember an hour later the very same questions, the same aspects of these assaults on cross-examination. She has a very difficult time remembering the basic questions. Who was home? What room was it in? What date did it occur? She can only come up with one date. And there's all kinds of inconsistencies and impossibilities in her testimony. And I want to highlight a couple of them for the Court to consider. But the only corroborative evidence in this case is the testimony of a woman we love. Her name is a friend who stays with me. And her only form of corroboration is saying that she overheard my client threatening her. She didn't hear about what? She has no idea what context the threat was in. It wasn't, if you tell anyone about these assaults, all she heard is, if you say anything, I'll hunt you down and kill you. Well, there she goes in her examination. Well, yeah, he says that all the time. And she gives specific examples. If you burn my food, I'm going to kill you. And she has no real concern that he is serious about this threat. There's no context. So our argument is it's really not a form of corroboration other than the fact that they both agree that he said it. But there's no context. And she has no capability of saying that he said it in relation to these alleged offenses. So other than that, nobody else corroborates your testimony. There's no physician who testifies as a prosecutor in the intercourse of a woman. There's no physical evidence outside of that. There's no testimony from another nobody who corroborates his testimony. And I understand that you certainly can prove your case with just testimony of the complainant witness. But it goes back to some of the older cases which I cited in my brief. I realize that is not the standard of what it used to be, clearly convincing without absolute corroboration, because of the inherent difficulty of defending yourself when somebody alleged you committed an assault. I realize that's not the law anymore in the case. It's very clear that that's inappropriate to create a new standard. It should always be beyond reasonable doubt. But that case is also very instructive. It says that shouldn't serve to reduce the reasons why that existed that way in the past. Whenever there's a latent period in reporting, inconsistencies and impossibilities in the testimony, when it's solely the testimony, it makes it very difficult to find guilt beyond reasonable doubt. In this case, we already talked about the inability of the complaining witness to be able to testify as to the report of the assault. On cross-examination, I ask very basic questions. I'm not that good of a cross-examiner to give me this trick. I asked her, I said, you testified that you were not assaulted after his son was born, correct? Yes. His son was born on February 22nd? Yes. You claimed the last assault to be in the second half of March? Yes. Three straight questions? That is absolutely inconsistent testimony. That's impossible testimony. I don't know how you can find beyond a reasonable doubt, at least as they count forward, that she was sexually assaulted. I think that's the problem. The problem, though, that the trial court has, and this is a circumstance in relation to my point, is that when you have a case that's based solely on the testimony of the complaining witness, and it's obvious that she either has no idea or has been untruthful as to one of the counts, it certainly has to weigh on the credibility as to all of the evidence and all of the counts. My impression is it was an all-or-nothing thing, and the court felt it wanted to go ahead and convict them on all counts as opposed to realizing that it couldn't make a victim on count four and convicting them on the other three. Perhaps. I have no idea, quite frankly, but it's just speculation. And, again, one last thing on the sufficiency of the evidence. Again, there is substantial issues raised in this brief as to things that she couldn't remember, and the state is right in a brief. Some of it is not directly related to the assault itself. It's ancillary to things like when she moved from the residence, when her brother moved from the residence. But these things illustrate her absolute inability to remember some of the most fundamental and important things that were going on in her life at the time, how she cannot remember being removed from the house for a period of a month. I'm sorry, it was 10 days, and she was involved with DCSF for a couple, three weeks. She can't remember any of the people. She doesn't remember any of the elements of the events. She had several interviews with several DCSF counselors, can't remember any of them, said they didn't even happen. This happened in the middle of the first two alleged assaults and the second two alleged assaults. She can't remember any of these events or items. However, on the other side of the coin, we show, as far as our theory indicates, we show very clearly that she had a very difficult home life. She had a mother who was very abusive, abused drugs and alcohol. She, her mother, had locked her out as well. I'll finish with my comments there. Thank you. Thank you, Counsel. Counsel? Good morning, Your Honor. I'm here to speak to the court and counsel. With respect to the cross-examination, I want to make two points. The first point, I guess, relates to a determination of prejudice. The typical course to preserve an argument that the court has erroneously excluded evidence will become, by way of offer of proof. What happened here is the state had objected to the line of cross-examination at hearsay grounds. The defense counsel offered a couple of rationales as to why the objection should be overruled. The court ultimately sustained the objection and the case was done. The problem we have, without having an offer of proof, is we don't really know exactly what this witness would have testified to. She may have been contrary to what the victim said. She may have corroborated what the victim said. It's really impossible for this court or any other court to determine or fix some kind of prejudice without knowing what it is that's been excluded. We have a line of examination that's been truncated, but that's really only half the battle, and that's why courts have held that when an offer of proof is not given, the argument is typically waived, and the waiver really stems from the fact that there is no error that's been preserved because there's no error manifest simply in the fact that a court rules on an objection when its evidence is being excluded. That said, I ask this court, really, the defense raised a lot of issues in this brief, a lot of arguments, and makes some interesting points, but the problem, of course, is that assessing an error of a circuit court's decision, and this court reviews the circuit court for an abuse of discretion in determining its determination whether to sustain or overrule the objection, this court has to really look at the trial for the prism of what was being presented to the court by way of a defendant's rationale. When the State Act raised its hearsay objection, the defendant's rationales were really twofold. Number one, well, the declarant being the victim, J.A., is on the witness stand, and there must be an opportunity to cross-examine, I guess the cross-examining being cross-examining the police officer who had interviewed the victim and then gleaning information from her. Or alternatively, to impeach the victim's testimony. Well, with regards to the first rationale, of course, that just is strictly hearsay, without exception. With regards to the impeachment, of course, that's true that you can ask the witness about statements that the victim may have made to her, but those statements have to be first confronted to the defendant herself, being the victim. And as counsel here, I think, can't really concede that was not done. So neither rationale really gave any justification for the circuit court to really turn down the State's objection of hearsay grounds. I make one additional point on this. I think that the objection probably came about one question too early, because at this point, the line of inquiry is whether statements have been made, or if there hasn't been a specific question, what did she say or didn't say. That being said, I think that the rationality offered by counsel at the time of trial, and really what is here in a good substantial part of the defendant's argument of appeal, seems to be that that's exactly where this line of inquiry was going. I mean, to preserve the question, I would have to go ahead and ask those questions. Well, correct, but I also think it also plays into the offer of proof. The offer of proof would say, Your Honor, what we're trying to get from this particular witness is X, Y, or Z. They may have a non-hearsay ground. Again, we don't know exactly what it is we were going with, but everything in the record indicates that it's heading towards a hearsay. The question itself is framed that the next question is going to elicit or attempt to elicit a hearsay response, and the rationale offered to overrule the objection clearly indicated the intent to seek some sort of hearsay or improper impeachment of the victim in this case. So it's our position that the court's role is not in abuse of discretion in sustaining the objection on that basis. Now, with regard to the second issue, whether or not the state can improperly impeach its own witness, I agree with counsel on that side. It's a difficult record to follow a little bit at this point in terms of the examination of the victim. She is, while she did provide, I think, pretty lucid testimony in regards to the assaults, she wasn't particularly lucid in terms of chronological sequencing of things, and I think that's where the problem sort of manifested itself. The problem I have in characterizing this as an improper impeachment is that impeachment suggests, I think, a repudiation of something rather than just an inability to articulate something in the way that the state is trying to get them to articulate it. The witness, I think, seemed a little bit confused on this point. I think that the record will show that. Hopefully that will be your interpretation as it was mine. The victim never repudiated a fourth sexual assault occurring. She was adamant when asked about this that there had been four. Impeachment would entail, I would suspect in this situation, a situation where there's a repudiation and then the state would have to go through 115-13 or whatever it is that would allow for subsequent admission of prior inconsistent statements, things of that nature. That's not really, in my view, what happened here. What happened here is that the victim had given testimony about three assaults and then when the state said, okay, let's talk about the next one, and she said, well, it wasn't anymore because it wasn't anymore after the defendant's child was born. As you read through the record, what you'll see happen is that my suggestion is that the victim had become confused when she then admitted that she wasn't aware of the date of the fact of when the defendant's child was born. Eventually she was presented with her prior statement to the police officer. I think the police officer recorded that statement, but nonetheless, and at that point indicated that date, which was actually the not correct date for the child being born. The sum total of that whole sequence of events demonstrates that, okay, that was the last one. That was the fourth one, and she never deviated from that. So I guess the bottom proposition of the state here is that everything here points to a recollection refreshed, not an impeachment, and as Your Honor pointed out, it goes to the weight of the evidence and not whether or not there's a gotcha moment that once she said, oh, and it wasn't anymore, and we can tick off one, two, three, oh, well, and it wasn't anymore. Like I said, she had some difficulties, there's no doubt about it. A young witness, probably not particularly bright, you know, operating in the crucible of a bench truck here. There's a lot of things that could be going on with the victims when talking about sexual assault cases. I would submit that no matter how you construe this, it is a recollection refreshed, not an impeachment. So the argument that there's an improper impeachment I think goes out the window there. With regards to the sufficiency of the evidence, it's typically not my practice to drone on and on about the evidence because it's there and you don't want to hear another closing argument. I would point out this much, that it should be bear in mind that this is a bench trial. The court was in a better position than any of us here, except for maybe counsel who's defending the case, to assess the victim's testimony, the defendant's testimony, the testimony of all of us. This is a high level of deference that a reviewing court has to give to a circuit court. And the court was very careful and conscientious in its consideration of the evidence. I won't contest the fact that there were some discrepancies and confusion, maybe some details that were out of place. She also, however, did provide testimony about the assaults that I would submit were clearly stated. With regards to the corroborating evidence, I believe the record will show that the witness who overheard the defendant speaking to the victim stated something to the effect of, if you tell anybody I will stalk you once you're down and I will kill you, which probably sounds a little more directed towards a sexual assault than it would be dropping your TV dinner on the floor or some of the other bases for the disputes between the victim and the defendant. Interestingly enough, when this witness confronted the victim about what she had overheard, she didn't want to talk about it, said I just can't tell you. So that seems to certainly tie into the overarching notion that the victim had to come forward earlier with this information because quite simply she was scared. She was scared of the defendant, she was scared of her mother's reaction. Her relationship with her mother was largely toxic. So it wasn't really someone that she could speak to easily about something. So again, every point that I would make in this regard, I've stated in the brief and I won't restate it here unless Your Honor has some questions you wish to ask me about it. But other than that, I would ask Your Honor to affirm the judgment of the circuit court. Thank you for your time. Thank you, counsel. Counsel? Thank you. I'll just make a couple of brief points. One other thing that I didn't get out goes to the sufficiency issue. It is important to understand that on direct examination, the complaining witness's mother freely admitted that after she came home from this time that she told this young girl that if there is one more problem, you're gone for good permanently. And our argument during the closing arguments and part of our theory of the case is that there is a watershed event that occurred following the doctor's appointment. There's a litany in this record about what from that appointment comes into the record. And eventually it was determined that nothing would come in because it's all predicted in a great deal. I think they addressed it a little bit in the brief. But the reality is none of it came in as evidence in this case, so I'm not going to address it at this point. But there was a doctor's appointment. Something came out of that doctor's appointment which caused the mother to go and demand answers. And our argument was that she had to come up with something tangible that she convinced her mother it wasn't her fault or wasn't an issue. And our argument was that this is the story that she came up with. And that's why it was so important to us to know what that officer was told because it's the only time she told the story. And you haven't raised as an issue on appeal that the trial judge was wrong in excluding what happened at the doctor's office, right? No, we have not. There was extensive motions and issues related to the rape. Quite frankly, to answer your question more appropriately, that was all preliminary. As our expectation of defense, the state was going to put on these doctors that they had disclosed and all this, and they just didn't put them on. So the issue, quite frankly, went away on its own. We couldn't put the doctors on, obviously. So at that point, the issue died. There's no issue on appeal on that ruling. No, there isn't. And it is a major point, though, that there was an issue that occurred that caused an answer that needed to come forward for the mother to satisfy the mother. And our problem is that we don't believe that she was able to tell a lucid story to the officer. Once she did, once the story was written down, she had that lucid story, and her story would be consistent with that report. And our argument was that she used that in order to do her testimony. And that's why in cross-examination, after she was brought right on through by the state's attorney, she was incapable of remembering these things. Very simple thing. And you argued all that to the trial judge. That was in a bench trial. In a bench trial. And the trial judge, in effect, said at the end of the day, yes, there's inconsistencies in her testimony, but I believe it happened beyond a reasonable doubt. That's true. That's what happened, right? I'm not suggesting that it wasn't. And why should we reverse that decision? Well, we don't believe, Judge, based upon the evidence that came in, that the trial court is accurate. Just because the trial court finds that way, you don't have to grant absolute deference to the trial court. Obviously, this court has the opportunity to review, and if it finds that the trial court was incorrect based upon the standards, then they can reverse it. We just think that the evidence as it came in could not have, because it's so inconsistent. And as I stated earlier, she was specifically asked, fourth assault occurred, or I'm sorry, he didn't assault you after the son was born, that was the 22nd of February, but you're saying the fourth assault occurred in March. Yes. That's inconsistent. It's impossible. That's not confusion. If she doesn't know the difference between March and February, that needn't be brought out so that the court understood that she didn't understand it. It's presumed that she did, since they didn't bother to bring it up. How can that statement in and of itself allow him to find guilty, at least as to the fourth count? It's impossible for that testimony to be true. You know, the defendant in this case, just for the last issue, because I think you need to listen, the defendant in this case did take the statement. He denied everything. This wasn't a situation where he didn't take the stand, that we were just left without denying him. He denied everything that she claimed. It seems obvious, but that is important that he took the stand and denied it. The officer testified that during her interview with him, he was forthright and honest. Jamie Zappel, who was the mother of his child, who was in a bitter custody battle, testified that when she first asked him about it,  She had more than anyone else reasonable anyone to put this guy in prison, and she came right out and said, yeah, he was surprised that this had occurred, that she was making these allegations. You know, when you look at the totality of the evidence, I think it's very clear that there could not be guilt beyond a reasonable doubt when we ask the court to use that statement. Thank you. Thank you, Counsel. We appreciate the briefs and arguments. Counsel will take the case under advisement. Court will be in a short recess.